UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
Tosin Adegbuji,

        Petitioner,

    -against -

UNITED STATES OF AMERICA,

        Respondent.
------------------------------------------------------------------X

93 Cr. 659 (RPP)
03 Civ. 2667 (RPP)
04 Civ. 9957 (RPP)

**OPINION AND ORDER**

**ROBERT P. PATTERSON, JR., U.S.D.J.**

  Tosin Adegbuji ("Adegbuji") has moved pro se for relief, pursuant to 28 U.S.C. § 2255 and pursuant to the All Writs Act, 28 U.S.C. § 1651, for a writ of error coram nobis to vacate his November 1, 1993 conviction and his 2002 violation of supervised release ("VOSR"). For the reasons that follow, Adegbuji's motion is denied.

**BACKGROUND**

  On April 16, 2003, Adegbuji, who is currently in immigration custody awaiting deportation, moved pursuant to 18 U.S.C. § 2255 claiming: 1) that he received ineffective assistance of counsel in connection with his 1993 mail fraud conviction; and 2) that he received ineffective assistance of counsel in connection with his 2002 violation of supervised release proceeding.

  In an Opinion and Order dated August 18, 2003, this Court denied Adegbuji's § 2255 motion on jurisdictional grounds because Adegbuji was no longer in custody on a sentence imposed by the Court. See Adegbuji v. United States, No. 03 Civ. 2667 (RPP), 2003 U.S. Dist. LEXIS 14246 (S.D.N.Y. Aug. 18, 2003). Adegbuji filed a Notice of

Appeal on September 5, 2003. On September 24, 2003, this Court issued an Order denying Adegbuji's application for a certificate of appealability.

On December 22, 2004, the Second Circuit denied Adegbuji's motion for a certificate of appealability of his § 2255 motion and remanded the § 2255 proceeding to this Court, stating that "the district court shall construe [Adegbuji's] Section 2255 motion as an application for a writ of error coram nobis" (citing U.S. v. Morgan, 346 U.S. 502, 505-08 (1954) (holding that a petitioner who is no longer in custody for purposes of the habeas corpus statute may bring a petition for a writ of error coram nobis to challenge his or her conviction)).[1]

One month earlier, on November 16, 2004, Adegbuji filed a pro se motion on November 16, 2004, seeking an extraordinary writ of error coram nobis pursuant to 28 U.S.C. § 1651 ("§ 1651 Petition"). In the § 1651 petition, Adegbuji attacked the calculation of his 1993 sentence and, in particular, the district court's finding that he was in Criminal History Category III. Accordingly, this Court will address the claims raised by both of Adegbuji's petitions as a writ of error coram nobis.

**DISCUSSION**

**I.  Standard of Review**

Adegbuji's petition is for a writ of error coram nobis pursuant to 28 U.S.C. § 1651, which provides:

> (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
>
> (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

---
[1] The Second Circuit mandate was filed in this Court on November 10, 2005.

"Coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998). See also United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000) (the writ is "not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid") (internal quotation marks omitted).

To obtain coram nobis relief, Petitioner "must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Fleming, 146 F.3d at 90 (internal quotation marks omitted).

## II. Adegbuji's Claims for Relief

**Petitioner's 1993 Sentence**

In his coram nobis petition, Adegbuji first challenges Judge Leval's calculation of his 1993 sentence and determination that Adegbuji is in Criminal History Category III. Without acknowledging that he had failed to disclose his prior criminal history to the Government[2], Adegbuji claims that he entered into the plea agreement on August 13, 1993 "on the knowledge that the sentence will be 0-6 months, representing a 2-level enhancement for two prior conviction[s] and a two-level downward departure for accepting responsibility for the conduct under Criminal Category II." (§ 1651 Petition, ¶ 9.) Adegbuji also claims that at sentencing, his sentence "was enhanced to Thirteen (13)

---

[2] Adegbuji provided the name "Abel Mafanya" when he was arrested in 1993. Adegbuji was found to have used this alias in an attempt to conceal his prison record from the court. See United States v. Mafanya, 24 F.3d 412, 413 (2d Cir. 1994).

months under Criminal Category III based on constitutionally insufficient evidence that he had three prior convictions while in fact he only had two prior convictions. There was nothing in the record or evidence before the court at the time of sentencing to suggest that petitioner had been convicted of a third offense or violated any law." (Id. ¶ 10.) Adegbuji also denies any violation of probation, asserting that he "was never in violation of, nor evading probation" (Id. ¶14) because he had been granted a transfer by the Rhode Island probation office to another probation office in San Diego, California (Id. ¶¶ 11-12), where the new probation officer "excused petitioner from paying the said restitution as long as petitioner remained a registered student." (Id. ¶¶ 12-13.)[3]

Although the Second Circuit incorrectly stated that Petitioner had three convictions in its decision to affirm Adegbuji's 1993 conviction, the court explicated the grounds for his criminal history calculation correctly:

> The first [conviction] was in the United States District Court for the District of Rhode Island, for violating the same federal statute involved in this case. Using the name, 'Albert Souza,' appellant had attempted to obtain a $3,900 cash advance on a credit card bearing that name. For that violation, appellant was sentenced in December 1989 to time served and three years of supervised release. The second conviction was in Rhode Island state court in January 1990 after appellant pleaded nolo contendere on a charge of passing a bad check in the amount of $1,053.32. For that violation, appellant was sentenced to two years of probation, conditional on restitution. After he failed to make restitution, appellant was charged with violating his probation. Warrants for his arrest on that charge, issued in May 1991, remained unexecuted when appellant was sentenced in this case.

Mafanya, 24 F.3d at 414.

Adegbuji provides no evidentiary support or corroboration for his claims that his sentence or Criminal History Category were incorrectly calculated. The claim made in

---
[3] The fact that Rhode Island does not have probation officers in other states and that probation officers cannot alter court orders of restitution does not seem to have occurred to Petitioner. Since Adegbuji does not offer any evidentiary support for his claim, this claim is disregarded.

4

Adegbuji's petition – that his sentence was enhanced to 13 months under Criminal History Category III based on three prior convictions instead of two – is incorrect, as shown by the probation report.[4] His Criminal History Category was based on his having two prior convictions and his violation of probation in Rhode Island with outstanding warrants. (PSR ¶¶ 35-40.) His sentence was also enhanced because he had given a false name, Albert Souza, to the arresting officer and had not disclosed two prior convictions. (Id.) Adegbuji's claims are insufficient to demonstrate an "error of the most fundamental character" in the calculation of his Criminal History category that placed him into Category III or to establish a claim for coram nobis relief based on "circumstances compelling such action to achieve justice."

Even assuming that Adegbuji could seek coram nobis relief here, his petition would still be dismissed because it is untimely. It is "undisputed that because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations." Foont v. U.S., 93 F.3d 76, 79 (2d Cir. 1996) (quoting Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir.

---

[4] A copy of the Pre-Sentence Investigation Report ("PSR"), revised on October 25, 1993, is attached as Exhibit A to the Government's letter brief dated July 10, 2003.

According to the PSR, Adegbuji had two previous convictions: a federal conviction for credit card fraud in 1989 for which a sentence of 3 years of supervised release was imposed, resulting in two Criminal History Points under the United States Sentencing Guidelines ("U.S.S.G.") §§ 4A1.2(e)(2) and 4A1.1(b), and a state of Rhode Island conviction for violation of state banking laws in 1989, for which a sentence of probation with a duty to provide restitution within three months was imposed, resulting in one Criminal History Point under U.S.S.G. §§ 4A1.1(e)(2) and 4A1.1(c), for a total of three Criminal History Points. (PSR ¶¶ 35-39.) In addition, Probation noted that Petitioner had failed to pay the required restitution and failed to report as directed, resulting in a violation report and two warrants being issued. (Id. ¶ 39.) Accordingly, the PSR stated that:

> Application Note 4 of 4A1.1 states that 'A defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (i.e. a probation, parole, or supervised release violation warrant) shall be deemed to be under a criminal justice sentence…' Therefore, and pursuant to 4A1.1(d), two more points are added for the outstanding violation of probation warrant for a total of five Criminal History Points. According to the Sentencing Table (Chapter Five, Part A) four through six Criminal History Points generates a Criminal History Category of III.

(Id. ¶ 40.) Based on this calculation, Adegbuji's Criminal History was Category III.

1994)) (internal quotation marks omitted). "A petition for a writ of error coram nobis, however, may still be time barred if the petitioner cannot provide a justified reason for failure to seek appropriate relief at an earlier date." Cruz v. People of NY, 2004 WL 1516787, *4 (S.D.N.Y. 2004) (citing Foont, 93 F.3d at 80). Adegbuji's petition fails to demonstrate that "sound reasons exist for failure to seek appropriate earlier relief." Fleming, 146 F.3d at 90. Adegbuji waited nine years from the time of his sentence in 1993 to his § 2255 petition to make this claim and failed to provide justification for his delay. This alone is enough reason to dismiss his coram nobis claim. See Cruz, 2004 WL 1516787 at *4 ("When a petitioner fails to provide a sound reason for delay, courts have held that a coram nobis should be dismissed if its filing has been delayed for more than several years") (quoting Echendu v. U.S., 2003 WL 21653370, *6 (E.D.N.Y. 2003) (barring coram nobis relief due to unjustified seven-year delay)); see also Foont, 93 F.3d at 80 (barring coram nobis relief due to an almost five-year delay). Accordingly, Adegbuji's petition for a writ of error coram nobis to vacate his November 1, 1993 conviction is denied as untimely.

**Ineffective Assistance of Counsel**

The Petitioner next alleges that he received ineffective assistance of counsel in connection with his guilty pleas for both his November 1993 conviction and his 2002 VOSR.

**Standard of Review**

Adegbuji's claims that he entered guilty pleas due to ineffective assistance of counsel must be evaluated under the two-part test of Strickland v. Washington. 466 U.S. 668, 687 (1984).

To establish a claim for ineffective assistance of counsel, a petitioner must demonstrate (1) that his counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the petitioner. Id. The performance of counsel is deficient if it "fell below an objective standard of reasonableness" under "prevailing professional norms." Id. at 688.

In addition to demonstrating deficient performance by counsel, a petitioner must show that the deficiency had an effect on the result and that the error was prejudicial to the petitioner. See Strickland, 466 U.S. at 691-96. A petitioner demonstrates prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687, 694.

In asserting these claims, the petitioner has the burden of overcoming the presumption that his counsel's representation was reasonable. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. As the Supreme Court stated in Strickland,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable (internal citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

466 U.S. at 689.

### The 1993 Conviction

Adegbuji asserts that he received ineffective assistance of counsel in connection with his 1993 conviction for credit card fraud due to the failure of counsel to inform Adegbuji that he could be deported nine or ten years after the conviction if he pled guilty to the crime. Adegbuji argued that his 1993 counsel was ineffective in his representation for Adegbuji's 1993 conviction because "my court appointed public defender lawyer . . . had claimed that, I am being allowed to plead guilty to the actual loss to the victim which was less than $10,000, and that I will never be deported based on that conviction because the offense is not a deportable offense based on the law available at the time of my guilty plea in November 1993." (§ 2255 Petition ¶ 9). According to Petitioner, "if my lawyer (court appointed) had effectively advised me that 9 or 10 years later, I could be deported retroactively based on the same offense, for which I was never detained at the time by the INS in 1994 . . . I would have proceeded to trial and the result would have been different." (§ 2255 Petition ¶ 10).

Assuming that in 1993, Adegbuji's attorney did not advise him that his conviction would become a deportable offense in 1996, counsel is not ineffective because he failed to anticipate changes in the law. Adegbuji has failed to demonstrate that the representation he received from his 1993 counsel was not objectively reasonable. Counsel was not required to anticipate that Adegbuji would violate his parole or that immigration rules would change and thereby negatively affect Adegbuji retroactively. Accordingly, Petitioner has not established ineffective assistance of counsel in connection with his 1993 conviction.

**The 2002 VOSR**

Next, Adegbuji claims that he received ineffective assistance of counsel on May 24, 2002 when Adegbuji pled guilty to a violation of his supervised release for failure to report to the Probation Department after November 15, 1994. Adegbuji claims that counsel had misinformed him that his prior conviction was an aggravated felony under immigration law. He stated in his petition that he pled guilty "as charged on advise from his court appointed lawyer that the offense constituted an aggravated felony offense for Immigration purposes and [Adegbuji] will be allowed to depart [the] United States rather than being detained for deportation or confined for violating probation." (§ 1651 Petition ¶ 6). Adegbuji maintains that if he had known that his 1993 and 2002 plea agreements could lead to deportation, he would have proceeded to trial. (<u>Id</u>.). Adegbuji argues, "if I knew [at the time of my plea] that the offense for violation of probation is not an aggravated felony offense for immigration purposes, as stated by my counsel to induce me to plead guilty, and is also not a deportable offense as he claimed, I would not plead guilty… " (§ 2255 Petition ¶ 6).

It is clear from the court transcript that Adegbuji knew that the INS had lodged a detainer against him. He was advised by his counsel in open court that an INS detainer had been filed against him and that deportation proceedings were likely to follow his admission to violating his supervised release. (Sentencing Transcript of May 24, 2002 "Tr." at 2-3.) He then expressly agreed to comply with any Immigration and Naturalization actions taken by the United States. This Court had advised Adegbuji of the consequences of his plea agreement on May 24, 2002. The Court transcript of that hearing states as follows:

> THE COURT: Now, he has been arraigned on violations of supervised release?
>
> MR. CONNIFF [Prosecutor]: Yes, your honor, last week. Just so it's clear, your Honor, the probation office generally agrees with what [defense counsel] said, but one provision that they feel strongly about, that today in addition to admitting guilt on specification number one, that [Adegbuji] also consent on the record to cooperation with the INS in connection with any deportation proceedings that are going to occur.
>
> …
>
> THE COURT: All right. And do you agree to comply with … any Immigration and Naturalization actions taken by the United States in connection with your continued presence in this country?
>
> THE DEFENDANT: Yes, your Honor.

(Tr. at 3, 5).

Secondly, Adegbuji has submitted documents with his coram nobis petition which establish that Adegbuji knew he was deportable in May 2002. (§ 1651 petition, Exhibit 2.) On May 24, 2002, Adegbuji signed a Withdrawal of Application for Admission/Consular Notification from the United States Department of Justice Immigration & Naturalization Service stating that "I understand that my admissibility is questioned for the *above reasons*, which I have read or which have been read to me in the English language. I request that I be permitted to withdraw my application for admission and to return abroad" (emphasis added). (Id.) A memo of the same date attached to the Withdrawal of Application states what the "above reasons" were.

> Subject [Adegbuji] was ordered excluded and deported from the U.S. on or about March 14, 1991. Subject was excluded/deported to Nigeria.

> Subject claimed that at the time he was using his Nigerian passport and was deported to Nigeria and not the U.K. Subject claims that he has dual Citizenship because his parents are Nigerian, and he was born in London, England. On January 10, 1993, subject entered the U.S. using the alias of Abel MAFANYA with DOB 4/30/1959.
>
> Subject was processed on May 24, 2002 as a VWPP [Visa Waiver Pilot Program] refusal.

See Exhibit 2B of Adegbuji's § 1651 Petition. Therefore, Adegbuji had previously been deported in 1991 and was deportable in 1993 and in 2002 for entering the country without permission of the Attorney General.

Both Adegbuji's claims that his court-assigned lawyer failed to advise him in 1993 that he would be subject to deportation as an aggravated felon and his claim that his 2002 court-assigned lawyer misadvised him that he was deportable because he had committed an aggravated felony were not prejudicial. He was subject to deportation anyway because of his prior deportation in 1991. He was clearly aware of that possibility, as he otherwise would not have entered the country in 1993 using a passport in another name.

Adegbuji has failed to satisfy the Strickland test. Thus, his claims of ineffective assistance of counsel in relation to his 1993 conviction and his 2002 VOSR must be denied. Adegbuji also has not satisfied the requirements for coram nobis relief because he fails to show that there are compelling circumstances for the Court to set aside or vacate his conviction, that sound reasons exist for failure to seek appropriate earlier relief, and that he continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.

## CONCLUSION

For the foregoing reasons, Adegbuji's motion for an extraordinary writ of error coram nobis pursuant to 28 U.S.C. § 1651 is denied.

IT IS SO ORDERED.

Dated: New York, New York
January 5, 2006

_____
Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this Opinion and Order Sent to:**

*Pro Se Petitioner*

Tosin Adegbuji – 5889
Sussex County Jail
41 High Street
Newton, NJ 07860

*Counsel for the Government*

Michael J. Garcia
United States Attorney
Southern District of New York
By: Christopher P. Conniff, AUSA
One Saint Andrew's Plaza
New York, NY 10007
Tel: 212-637-1045
Fax: 212-637-0412